Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Virginia
### Richmond Division

Chidimma Uwasomba, John Doe(a), John Doe(2) )
_Plaintiff(s)_ )
(Write the full name of each plaintiff who is filing this complaint. )
If the names of all the plaintiffs cannot fit in the space above, )
please write "see attached" in the space and attach an additional )
page with the full list of names.) )
-v- )
  )
  )
  )
  )
Virginia Department of Social Service )
_Defendant(s)_ )
(Write the full name of each defendant who is being sued. If the )
names of all the defendants cannot fit in the space above, please )
write "see attached" in the space and attach an additional page )
with the full list of names.)

Case No. __3:24cv405__
(to be filled in by the Clerk's Office)

Jury Trial: (check one)  ☒ Yes   ☐ No

## COMPLAINT FOR A CIVIL CASE

I. **The Parties to This Complaint**

  A. **The Plaintiff(s)**

  Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

  Name: Chidimma Uwasomba
  Street Address: 3904 Grove Point Dr
  City and County: Richmond
  State and Zip Code: VA 23223
  Telephone Number:
  E-mail Address:

  B. **The Defendant(s)**

  Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1
    Name: Serve — Virginia Department of Social Service, Jinjie Anderson (w)
    Job or Title (if known):
    Street Address: 8600 Dixon Powers DR
    City and County: Henrico Co (w)
    State and Zip Code: VA 23228 (w)
    Telephone Number: 804.501.4001
    E-mail Address (if known):

Defendant No. 2
    Name:
    Job or Title (if known):
    Street Address:
    City and County:
    State and Zip Code:
    Telephone Number:
    E-mail Address (if known):

Defendant No. 3
    Name:
    Job or Title (if known):
    Street Address:
    City and County:
    State and Zip Code:
    Telephone Number:
    E-mail Address (if known):

Defendant No. 4
    Name:
    Job or Title (if known):
    Street Address:
    City and County:
    State and Zip Code:
    Telephone Number:
    E-mail Address (if known):

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question     ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

A. **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

B. **If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

    a. If the plaintiff is an individual
       The plaintiff, *(name)* Chidimma Uwasomba, is a citizen of the State of *(name)* Virginia.

    b. If the plaintiff is a corporation
       The plaintiff, *(name)* Virginia Department of Social Service, is incorporated under the laws of the State of *(name)* Virginia, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual
       The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attachment

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

_See attachment_

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 05.31.2024

Signature of Plaintiff: Chidimma U. Owasomba
Printed Name of Plaintiff: Chidimma Owasomba

### B. For Attorneys

Date of signing: _____

Signature of Attorney _____
Printed Name of Attorney _____
Bar Number _____
Name of Law Firm _____
Street Address _____
State and Zip Code _____
Telephone Number _____
E-mail Address _____

## COMPLIANT FOR VIOLATION OF CIVIL RIGHTS

Chidimma Uwasomba, John Doe 4 and John Doe 2, prose in filing civil right violation rule 42 U.S.C. § 1983 and violation of fourteenth amendment demand a jury trial.

## STATEMENNT OF CLAIM

1. On March 27, 2024, Shelby Moody alongside two others showed up at my doorstep between the hours of 10-11am. I happened to be downstairs making a quick breakfast and in rush to head back upstairs for my new job training.

2. I opened the door to acknowledge their presence and to also let them know this was not a good time and that I am currently in training for my new job. At the time I have been out of work for six months and was eager to get back to work.

3. Shelby expressed that DSS can help with next month's rent, and she needed to see my kids who was sleeping upstairs in my bedroom where my workstation was located. I expressed this was not a good time to go over the court services, which included a hair follicle test to be completed within 24 hours and services to be completed soon.

4. My mother was unprepared on the couch, I am pregnant and wanted to have my breakfast as quickly as possible and return to my job training. We concluded that another agent will be reaching out to me to schedule a time to complete hair follicle test, court order services and see my children before Friday. Throughout the day I checked my phone to see if the new agent has reached out.

5. The following day I messaged Shelby notifying her no one has reached out to me. She didn't respond, few hours later as I was upstairs applying for another job, my mother shouted out that social service was at the door with about twenty officers and her next

statement was they are taking the kids. I ran downstairs, only to witness my children being rushed away in a van.

6. I immediately drove to Henrico Social Service to learn why my children were removed with such an aggression. Charlene Reed the supervisor responded that an emergency order was requested because Shelby Moody expressed my children's father who was and is currently incarcerated may get out of jail on bond. It made absolutely no sense, he was incarcerated without bond, no pending bond hearing nor was he making any threats to harm my children.

7. Prior to bearing children I tried to plan my future based on my limited resources. I wanted to be financially stable and be a stay home mother, unfortunately an employment issue with a notable bank disrupted those plans.

8. I was relocated from Viriginia to Maryland and lost everything, during that vulnerable time I met my kids father Isaiah Bull. The relationship started good, two needy people helping each out.

9. Eventually it became apparent we weren't compatible; I am very goal oriented with objectives and it was important to accomplish those objectives to provide for my children. Unfortunately, Isaiah didn't have much of any goals nor objectives, so it caused a lot of rifts in our relationship.

10. It took some time to end the situationship, unfortunately with the passing of my mother's client in October 2023 alongside a recent altercation between Isaiah and I in February 2024, my mother decided she was going to start staying with me during the weekdays starting March 2024 to assist with her grandkids.

11. My children were under the care of their mother and grandmother and their father who was and is currently incarcerated had no bond nor making any threats to bring harm to my children for an emergency removal order to be requested on March 28, 2024.

12. My take for Shelby Moody request of the emergency order was because I didn't allow her to interrupt my training after she expressed DSS can pay my rent, it was raining outside, she was agitated and with a bruised ego decided to use her authority to violate my parental rights with an unconstitutional request for an emergency removal order as opposed to keeping the agreed upon next day meeting to see the kids, complete the hair follicle test within the 24hr window and go over services.

13. I am a great mother, a great provider, my children's needs and wants are beyond met. And per the court website of emergency removal an immediate threat and danger needs to be present. I am uncertain what threat and danger my mother and I posse to the children that an emergency removal order was requested.

"An Emergency Removal Order (removing the child from the home) can be entered ex parte (with the court only hearing from the Division of Social Services and without notice to the parent or guardian) when the danger to the child is imminent and sufficiently severe or when there is no less drastic alternative. Within five days, the court must hold a Preliminary Removal Hearing with notice to all interested parties and opportunity to be heard".

14. When my children were initially removed, Charlene Reed, DSS supervisor stated during our in-office conversation that my children were staying with a family with children. I was a little relived but very concerned and confused with what was happening.

15. Few days later during my conversation with the foster care worker Abby Van Esselstyn, I asked the structure of the household, the children's age. She responded my children are staying with a single black man in his 30s and no other children presence.

16. I lost it and immediately drove to Henrico Juvenile Court to request for an emergency hearing to have my boys returned to me as there was no immediate threat in a household consisting of their mother and grandmother.

17. However, during the hearing Shelby Moody, lied to the judge provided misinformation statement that I didn't have any support and Isiah maybe getting out on bond to support me with the children. She took an advantage of an old message to make her argument despite knowing my mother has been living with us as of March 2024 and was presence during her visits in March.

18. Knowing how uncomfortable I was with my babies living with a single man, I was never given the option for a family to care for my kids while we sort out the issue. When I finally learned my mother can temporary foster my child, we immediately started the process in early April.

19. Few days later we received a letter from DSS denying my mother as temporary foster parent stating she lives with me, acknowledging that I indeed do have an in-home support making their court arguments unjust and unconstitutional.

20. Shelby and Abby both took the stand and argued that my children should remain in foster care, that I lacked support and needed Isiah who may be released on bond and a danger to the children for support. Shelby and Abby have repeatedly fabricated statements to violate my fourteenth amendment and abused their power and authority at the expense of my household.

21. All because I wouldn't allow Shelby to interfere with my work training despite offering to pay next month's rent (unfortunately my monthly bills don't only consist of rent) decided to fabricate speculation that father could get out on bond. Speculation of father

getting out on bond who is not making threats to harm children is not ground for emergency removal of my children and placed in foster care as imminent nor sufficiently sever threat to the children does not exist.

22. As we continued to fight for my mother to foster her grandkids, we provided address to her four-bedroom house located in Chesterfield, VA. That's equipped with a large outdoor playground and lots of my children's favorite. It was important that I maintained some level of comfort for my children, similar care to mothers and less distress.

23. Their grandmother should've been granted foster care rights, which would've eliminated the emotional traumatization, psychological damage, high level of stress, proper loving/care and foster home abuse and neglect.

24. However, in court Shelby and Abby continued to take the stand and argued that my children should remain in foster care because I don't have any support, needed Isaiah for support, and he may get out of jail on bond to be my support. Meanwhile, acknowledging in their foster care denial letter grandmother as in-home support.

25. They attempted to utilize my employment civil matter with a bank to argue my need of Isiah for financial support. I have updated them numerous times with email communications prior to court hearing that my issue with the bank has been settled so they can present proper facts to the judge in conjunction with my legal team arguments so my children can be returned to me.

26. Unfortunately, due to the broken system, Social Relationship between Judge Sharon Jacob and her high value for DSS didn't help much. DSS took advantage of that relationship and their title to destroy my household.

27. The goal of DSS ought to be to keep families together, rather they choose to present false material facts for the judge to act upon, despite knowing the issue of lack support and financial assistance has been resolved.

28. Their action is consistent with intentional infliction of severe emotional distress and traumatization of my household despite knowing the issue has been resolved and a major concerns of sexual acts performance and neglect at the foster home.

29. My children's father and I are no longer together and moved on with separate partners. So, I am not understanding DSS argument of support.

30. Isiaih can support his kids from afar as he was doing, picking up diaper money from his job. It was unfortunate that I decided to give him a ride out to Chesterfield for his appointment with his probation officer, a mistake that I regret as it resulted in a domestic dispute which led to the recent interaction with DSS, and the altercation didn't involve the children.

31. He was incarcerated same day and has remain incarcerated. If DSS concern was Isaiah being released on bond, the children would have been removed during Shelby Moody initial visit in early February a week after the incident. She came over sat down with me for over an hour. The kids were sleeping however Kane woke up the last five minutes or less of her visit.

32. Her request of March 28, 2024, Emergency Removal was purely unconstitutional. Solely because I wouldn't allow her to interrupt my work training, otherwise the request would've been made in early February.

33. Furthermore, during the adjudicatory hearing held on April 19, 2024, towards the end of the hearing Stephanie Henkle, my children's GAL, made a disturbing statement that my eldest son was performing sexual acts on his younger brother, and I didn't correct it.

34. This was never brought to my attention prior to court to verify whether it's a pre-existing condition rather DSS assumed that I was aware and waited till court to use it as a tool to attempt to justify the violation of my Fourteenth amendment.

35. My eldest son has never performed any sexual acts in my presence upon his little brother. My children are being traumatized, emotionally abused, and sexually abused based on Stephanie Henkle (GAL) statement over speculations, assumptions and hypothetical that their father may be released on bond who is still incarcerated till this day.

36. As they continue to attempt to justify their unjust behavior, I was accused of laboring my children over an online toys and education store (nurababy.com) named after my daughter that I lost at 5 months. I gifted the online toys/education store to my children for their birthday, as opposed to it being viewed as a financial means to provide for my children, their mother being a great mother and building a great future for her boys. It was used against me as if I am illegally laboring my children.

37. Now that I am in a great position to maximize my children's online toys and educational store and relocate to Texas for a fresh start.

38. DSS will not relinquish possession of my children and argued that I am attempting to run away from completing services. Services DSS should've put in place as of mid-March and can be completed with my children under my custody.

39. I need my children to market and grow their online business. I can't create children's content nor mimic a child in marketing and promotion of children's products and services.

40. I am simply trying to start a new life with my children free of disorder. However, DSS are arguing that I am trying to get away from services and will not relinquish my children as if those services are what's going to provide and protect my children. The services can be completed with my children under my custody, the ability to financially support my children are more important than my children being wasted away in foster care over services completion.

41. I need my children returned to me, I can't market and create children's content by myself. DSS is destroying my household with their high level of questionable character and incompetence. DSS is emotionally and financially destroying my household and my attempt to relocate for a fresh start and safety.

42. They're now creating the danger and uncertainty with their sever financial disruptions and traumatization's.

43. Their actions have now become very counterproductive and dangerous. I now have the funds to invest and grow my children's business (nurababy.com), which is supposed to be goal, provide and protect. Rather the goal has become maneuvering DSS illegal emergency removal into foster care.

44. I have been left with no choice but to focus on navigating DSS parental rights violation, the return of my children and bombardment of unnecessary services.

45. Their father whom DSS deemed the reason for the removal, is currently incarcerated. As opposed to using this time to focus on strengthening our financial position to relocate

away from the safety concern, which is supposed to be the goal. DSS has made their unjust removal and navigating this complex legal hinderance the goal.

46. DSS has continued to violate my parental right by not notifying their pregnant mother of her children sever cold prior to April 29th visitation and for over two weeks I was down with a sever cold jeopardizing my unborn child.

47. During the visitation my children appeared neglected, unhealthy and uncared for, they both looked as if they hadn't been bathed in days and was smelling with yellow mucus all over their eyes and nostrils.

48. My boys are traumatized, very unhappy and was asking to go home. When I brought it to the attention of DSS, it was dismissed and replied my boys are fine and are not asking to go home. Which has left me even more concern because my children have been with me 24/7 since birth and don't like being anywhere else but home.

49. On May 30, 2024, a month after initial visitation, my children are still heavily congested and coughing. During the end of our visitation, my children had a full-blown mental breakdown. John Doe (4) crying to go home, wouldn't get inside social worker vehicle, was running around through the parking lot which was very dangerous.

50. My home is a toy house, everywhere is filled with toys, lots of learning materials, my garage filled with their online store toys/educational materials, they have iPads, ATVs, motorcycles, monster trucks, PlayStation 5 & 4 with over 300 games. My children don't like being anywhere but home and I am certain the foster home does not have one percent of toys and options that my children have at home or their grandmother's house.

51. John Doe (4) and John Doe (2) were taken from a fun, loving and caring home to a home of abuse and neglect. DSS are depriving me from enjoying the fruit of my labor whom I

went through great pain to birth into this world. I have high risk pregnancies, I had to endure 3 surgeries with John Doe (4) to bring him into this world. I nearly lost him at 22 weeks and had to endure an emergency surgery and was rendered to bedrest for the reminder of my pregnancy.

52. With John Doe (2), 2 surgeries and was in the hospital from 30 weeks because my water broke early. I went through so much to bring my kids into this world and to have them taken away over speculation and coercive tactics brings great pain and agony.

53. I am a great mom; I give my children the world. They only eat organic food with top tiers safety gears, from their $800 a piece highchair, $35 a piece custom stainless steel water bottles 7 for each child, to their $600 a piece car seat. When Kane started potty training, I purchased a brand-new Lexus GX SUV so he can have room for emergency car ride potty. I go above and beyond for my children. I am top of the list for mothers who prioritize safety, comfort and convenience.

54. My children have enough clothing, toys, learning materials, gaming, etc. for 20 children, they're beyond loved and cared for. My children were removed and taken away from everything they love and matters to them, and their lifestyle reduced.

## CAUSE OF ACTION

55. All acts complained of herein were carried out by DSS officials, employees, agents, servants, and/or representatives, pursuant to the policies, customs and practices of the City, including DSS.

56. Defendant's policy, custom and/or practice of using Coercive and Deceptive Tactics for emergency removal has directly and/or proximately caused deprivation of my rights, under the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983.

57. Defendant's failure to adequately train or supervise DSS caseworkers regarding the protection of parents' Fourteenth Amendment rights has directly and/or proximately caused DSS caseworkers to use Coercive Tactics to request for illegal emergency removal orders, depriving Plaintiffs of their rights under the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983.

58. The violations and injuries suffered by Plaintiffs are typical of those suffered by members of Unconstitutional Search/Removal, Foster Home Negligent/Abuse and Defamation.

59. The need for Defendant to provide more or better supervision regarding compliance with parents Fourteenth Amendment rights when presented with emergency removal order is obvious, but Defendant has made no meaningful attempt to prevent or forestall DSS caseworkers use of the Coercive Tactics.

60. As a result of Defendant's conduct, Plaintiffs suffered the injuries hereinbefore alleged.

## JURY DEMAND

Plaintiffs demand trail by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court:

a. Declare that Defendant's acts, practices, polices and/or omissions deprive Plaintiffs their rights under the Fourteenth Amendment to the U.S. Constitution;

b. Provide appropriate and equitable relief to remedy Defendants unconstitutional policy, custom, and/or practices of using Coercive Tactics to violate parent Fourteenth Amendment rights with an unjust emergency removal order.

c. Award Plaintiffs punitive damages in the amount of $350,000 per plaintiff.

d. Award compensatory damages to Named Plaintiffs in amounts that are fair, just, and reasonable, to be determined at trail; and

e. Grant such other and further relief as this court may deem just and proper.

*[signature]*

Chidimma Uwasomba
3904 Grove Point Dr
Richmond, VA 23223
8.04.502.8534
Delilau@gmail.com

Virginia Department of Social Service
5600 Cox Rd
Glen Allen, VA 23060